FILED

2008 Aug-12  AM 10:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **AMERICA'S BEST CARE PLUS, INC.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:06-CV-1075-RDP** |
| | } | |
| **COMPUTERS UNLIMITED,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Before the court are Defendant's Motion for Summary Judgment (Doc. # 50), filed on January 18, 2008; Plaintiff's Motion for Partial Summary Judgment (Doc. # 74), filed on March 31, 2008; and Defendant's Motion to Strike Testimony and Reports of Plaintiff's Designated Expert (Doc. # 46), filed on January 11, 2008.  These three motions have been fully briefed and the issues presented came under submission on May 27, 2008.

**I.      FACTS**

    **a.      The Parties**

Plaintiff America's Best Care Plus, Inc. ("ABC") operates a pharmacy that specializes in respiratory medications, diabetic supplies, and home medical equipment.  (Doc. # 52-8, Ex. G, Deposition of Tensia Hughes, at 56-58)  In July 2003, ABC entered into a Software License Agreement and Equipment Purchase Agreement (collectively, the "Software Agreement" or "the Agreement") with Defendant Computers Unlimited, a software developer.  (Doc. # 51, EX-A ("Agreement") at A-7).  In the Software Agreement, ABC purchased a license to use the TIMS billing software and TIMSIN interface software (collectively, the "Software") developed by Computers Unlimited.  (*Id*. at A-9-17).  The Agreement included charges for programming services

aimed at adapting the TIMSIN software to receive information from ABC's existing software.  (*Id.*).

ABC's existing order software is called "HealthLYNX" and "SalesLogix."  (Hughes Deposition at

27-28).  ABC intended to continue to use its existing software for managing pharmaceutical orders,

but wanted the Computers Unlimited Software to handle the billing functions.  (Doc. # 52-6, Ex. F,

Deposition of Charman Howell, at 106)  The purchase price listed in the Software Agreement was

$58,569.  (Agreement at A-8).

    The process by which ABC handles orders begins when ABC receives a prescription from

a physician.  (Howell Deposition, at 97).  Employees in the intake department enter the prescriptions

in the order software and deliver the medication to the customers.  (*Id.* at 99).  The same information

entered into the order software must be entered into billing software in order to bill Medicare,

Medicaid, or another insurance company.  (*Id.* at 101).  ABC entered into the Software Agreement

in order to obtain software that would interface with the order software, thereby reducing the amount

of work required by employees in the billing department.  (*Id.* at 106-7).

    b.    **The Software Agreement**

    The Software Agreement contains two parts.  The first part is a standard contract used by

Computers Unlimited, while the second part ("Schedule A") is the result of specific negotiations

between Computers Unlimited and ABC.  (Doc. # 61-5, Ex. A, Deposition of Robin Campbell, at

161-62).  The standard portion of the Agreement includes both affirmative warranties and limitations

of warranties.  In the Agreement, Computers Unlimited makes this warranty:

> [Computers Unlimited] hereby warrants that the [Computers Unlimited] Application
> Software furnished to Customer or modifications provided will perform in
> accordance with the relevant [Computers Unlimited] Documentation for a period of
> 365 days from the earlier of the date of online transaction processing or 120 days
> from the Effective Date of this Agreement. . . [Computers Unlimited's] sole

2

obligation under this warranty shall be to remedy any conformance to the relevant [Computers Unlimited] Documentation as soon as is reasonably possible after receipt by [Computers Unlimited] of written notice of such nonconformance from Customer. . . .

(Agreement at 3). The section entitled "Exclusion of Warranties, Limitation of Liabilities" contains

the following language:

> THE WARRANTIES STATED HEREIN ARE LIMITED WARRANTIES AND ARE THE ONLY WARRANTIES MADE BY [COMPUTERS UNLIMITED], AND [COMPUTERS UNLIMITED] DISCLAIMS ALL IMPLIED WARRANTIES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY, NONINFRINGEMENT, OR FITNESS FOR A PARTICULAR PURPOSE. FURTHER, [COMPUTERS UNLIMITED] DOES NOT WARRANT, GUARANTEE, OR MAKE ANY REPRESENTATIONS REGARDING THE USE OR THE RESULTS OF THE USE OF SOFTWARE, MANUFACTURER'S HARDWARE OR [COMPUTERS UNLIMITED'S] DOCUMENTATION IN TERMS OF CORRECTNESS, ACCURACY, RELIABILITY, OR OTHERWISE.

> No statement, oral or written, inconsistent with this warranty is binding on [Computers Unlimited].

> [Computers Unlimited's] maximum liability shall not exceed and Customer's remedy is limited to either (a) repair or replacement of the defective software or Manufacturer's Hardware, or, at [Computers Unlimited's] option, (b) return of the software of Manufacturer's Hardware and partial or full refund of the Purchase Price. Such remedy shall be Customer's entire and exclusive remedy.

> UNDER NO CIRCUMSTANCES WILL [COMPUTERS UNLIMITED] BE LIABLE FOR ANY CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, OR PUNITIVE DAMAGES OR EXPENSE OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, PERSONAL INJURIES AND LOSS OF PROFITS ARISING IN CONNECTION WITH ANY MISREPRESENTATION, BREACH OF CONTRACT OR TORT OR WITH THE USE, ABUSE, UNSAFE USE OR INABILITY TO USE THE SOFTWARE OR MANUFACTURER'S HARDWARE FURNISHED HEREUNDER, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(Agreement at 5).

3

There is, however, another warranty in Schedule A: "Software is unconditionally warranted against software errors for a period of one year at no additional charge, excluding long distance telephone charges." (Agreement at 12).

In addition, the Agreement contains provisions that attempt to trigger the operation of the parole evidence rule. The first of these provisions is a merger clause:

> The provisions of this Agreement supersede all prior agreements between the parties and no change, termination, or attempted waiver of any of the provisions hereof shall be binding unless in writing and signed by a duly authorized representative of each party.

(*Id*. at 7). The other relevant section states that "[t]his Agreement, together with Schedule A, any supplements thereto, and Amendments executed by the parties, constitutes the entire agreement between [Computers Unlimited] and Customer." (*Id*.).

### c.     The Alleged Problems with the Software

In the Fall of 2003, employees of both ABC and Computers Unlimited reported that TIMS had problems interfacing with ABC's order software, SalesLogix. ABC initially planned on implementing the software on December 1, 2003, but delayed implementing the software until a Computers Unlimited employee, Cindy Allen, fixed the problems. (Howell Deposition, at 447-57). ABC implemented the Computer's Unlimited software with a "go live" date around March 1, 2004. (Doc. # 17 at ¶ 19).

The software did not perform to ABC's satisfaction. Specifically, ABC has alleged that TIMS and TIMSIN did not properly interface with each other, causing orders to become "lost" and requiring that an ABC employee search for and manually enter the lost orders into TIMS. (Hughes Deposition at 247-50). Furthermore, TIMSIN did not properly interface with SalesLogix. (Howell

4

Deposition, at 283).  There were numerous other problems: in some circumstances, the Software would fail to make a new "Certificate of Medical Necessity," a required document for Medicare reimbursement, when a patient changed physicians (Doc. # 64-6, Ex. L, at 2-3); TIMS would not include strength, quantity, and dosage information about prescriptions (Doc. # 65-2, Ex. O, at CU04741); the Software would transmit the wrong quantity of medications (*e.g.*, milliliters instead of milligrams), resulting in vendees underpaying ABC (Doc. # 62-5, Ex. P); TIMS would submit wrong dates (Doc. # 62-5, Ex. Q, at 1-3); the Software would charge a dispensing fee for diabetic supplies, even though diabetic supplies do not require payment of a dispensing fee (Hughes Dep. at 296); and the software would pull prices from the wrong computer field (Doc. # 65-2, Ex. R).

These alleged problems, along with several others not here listed, required ABC billing department employees to spend substantial amounts of time reviewing the billing information.  (Doc. # 53-2, Ex. G, Deposition of Janice Ferrell, at 52-53).  ABC's billing department increased from five people to seven in the time following its implementation of the Software.  (*Id*.).  On August 3, 2004, ABC sent a letter to Computers Unlimited demanding that Computers Unlimited refund a large portion of the purchase price and fix certain alleged problems in the Software.  (Doc. # 65-4, Ex. A-8).  The letter invoked ABC's right to terminate the Agreement.  (*Id*.).  After Computers Unlimited received the letter, the parties held a telephone conference.  (Doc. # 52-4, Ex. B, Deposition of Keith Sanderson, at 401).  After the call, ABC determined that the Software was not going to meet its needs.  (Sanderson Dep., at 403-04).

### d.    Procedural History

ABC filed suit against Computers Unlimited on May 3, 2006 (Doc. # 1-1 at 3).  Computers Unlimited removed the action to this court on June 5, 2006.  (Doc. # 1).  On August 28, 2006,

Computers Unlimited answered ABC's complaint and filed a counterclaim, asserting that the Software Agreement entitles it to recover its attorneys' fees from ABC. (Doc. # 13). ABC filed an amended complaint on February 8, 2007. (Doc. # 17). This amended complaint contains thirteen claims: (1) Breach of Contract; (2) Fraud; (3) Misrepresentation; (4) Suppression/Concealment; (5) Unjust Enrichment; (6) Fraudulent Inducement; (7) Negligence; (8) Wantonness; (9) Fraudulent Inducement; (10) a claim under Restatement of Torts § 552; (11) Express Warranty; (12) Breach of Implied Warranty of Fitness for a Particular Purpose; and (13) Breach of Implied Warranty of Merchantability. (*Id.*).

## II. SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when it can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to show affirmatively the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point

7

out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.   ANALYSIS

Both parties have moved for summary judgment. Computers Unlimited seeks summary judgment in its favor on all claims. In responding to Computers Unlimited's motion for summary judgment, ABC has expressly abandoned several of its claims, including breach of oral warranties, negligence, wantonness, and its claim under the Restatement of Torts § 552. ABC seeks partial summary judgment, asking the court to find that the undisputed evidence establishes that Computers Unlimited breached express warranties. The court will address the disputed issues claim by claim (*i.e.*, with respect to those claims not abandoned by the parties), addressing the issues of the statute of limitations and damages at the end. Lastly, the court will address Computers Unlimited's motion to strike ABC's expert.

### a.   Breach of Contract

Computers Unlimited argues that the court should grant summary judgment in its favor on ABC's breach of contract claim because ABC's claim arises out of alleged oral representations that are barred by Alabama's Statue of Frauds and Parole Evidence Rule. (Doc. # 51 at 15). ABC does

8

not address this line of argument in its response brief.  (Doc. # 59).  However, it does attempt to

defend its breach of contract claim against a secondary argument made by Computers Unlimited.

(*Id*. at 28, n.9) (responding to footnote # 9 in Computers Unlimited's Brief (Doc. # 51)).  Because

ABC makes an attempt to argue in favor of its breach of contract claim, the court does not conclude

that ABC has abandoned this claim altogether.

However, the unanswered arguments do suggest that Computers Unlimited is correct in

arguing that a breach of contract claim premised on oral representations alone would not survive

summary judgment.  The Agreement contains a merger clause and therefore purports to be fully

integrated.  (Agreement, A-7).  Under Alabama law, fully integrated agreements supercede all prior

negotiations and a party cannot use parole evidence to contradict a fully integrated agreement.  ALA.

CODE § 7-2-202.  Furthermore, because this case involves the sale of goods valued in excess of $500,

Alabama's Statue of Frauds applies both to the original Agreement and to any purported

modification of the Agreement.  ALA. CODE § 7-2-201(a) (statute of frauds); ALA. CODE § 7-2-

209(3) (applying statute of frauds to modifications of agreements).  Finally, Alabama's version of

the Uniform Commercial Code also specifically notes that "[a] signed agreement which excludes

modification or rescission except by a signed writing cannot be otherwise modified or rescinded."

Ala. Code. § 7-2-209(2).[1]  Together, these statutory provisions preclude ABC from attempting to

base a breach of contract action on any negotiations occurring before the signing of the Agreement

or on any subsequent modification of the Agreement without producing evidence of a written

---

[1]This provision is not enforceable in agreements between merchants without separate
signatures on the provisions at issue, but this exception does not apply to this case because ABC is
a pharmacy, not a merchant in software.  ALA. CODE § 7-2-903(2) (excepting transactions between
merchants); ALA CODE § 7-2-103 (defining "merchant" and "between merchants" as terms of art
under Article 2 of Alabama's version of the UCC).

modification.  The Rule 56 record contains no evidence of a written modification and therefore ABC cannot premise a breach of contract claim on negotiations or modifications.

The foregoing analysis, however, does not mean that Computers Unlimited is entitled to summary judgment on the breach of contract claim.  The court finds that ABC's breach of contract claim is not premised solely on oral modifications and negotiations.  Instead, the Amended Complaint avers, among other things, that Computers Unlimited breached the part of the agreement that described TIMS payroll functionality.  (Doc. # 17 at ¶¶ 29-30).  Computers Unlimited does not address this aspect of ABC's breach of contract claim.  As a result, Computers Unlimited has not shown that it is entitled to judgment as a matter of law as to the entirety of ABC's breach of contract claim.

### b.      Breach of Express Warranty

Both parties move for summary judgment as to the breach of express warranty claim.  ABC claims that the undisputed affirmative evidence shows that it is entitled to damages for Computers Unlimited's breach of the two express, written warranties contained in the Agreement.  Computers Unlimited makes two counter-arguments: (1) that ABC did not plead a claim of breach of written express warranty and is therefore precluded from adding a claim at this late stage of the litigation; and (2) that ABC has not shown that it provided the form of notice required by the Agreement.

### i.      Pleading the Express Warranty Claim

ABC included a claim for breach of express warranty in Count XI of its Amended Complaint.  (Doc. # 17).  Computers Unlimited argues that ABC alleged only breach of *oral* express warranties in its complaint and did not allege that Computers Unlimited breached any *written* express

warranties.  The court concludes that ABC pled the warranty claim with sufficient clarity to put Computers Unlimited on notice of ABC's claims.

The Amended Complaint does not specify whether the claim for breach of express warranty is based on oral or written express warranties, or both.  Instead, ABC pled its claim very broadly, including the standard language that "ABC incorporates by reference the foregoing facts, information, and causes of action as if fully stated herein."  (Doc. # 17 at ¶ 89).  Included in the earlier claims is a claim for breach of contract that generally avers that Computers Unlimited did not satisfy its obligations under the Agreement.  (*Id.* at ¶¶ 33-37).

It is undoubtedly true that the express warranty claim primarily contemplates oral express warranties. It is also true that ABC's response brief to Computers Unlimited's motion for summary judgment completely abandons the oral express warranty theory of the complaint.  Nevertheless, the broad language of the claim and the fact that ABC incorporated all of its earlier allegations by reference are sufficient to withstand Computers Unlimited's argument that a claim for breach of written express warranty falls outside the pleadings. Though "warranty" and "contract" are not fungible terms (and actions for the breach thereof are not fungible claims), it is clear in this case that a breach of the written warranties could be expressed as either a breach of warranty or a breach of contract.  The fact that ABC incorporated a breach of contract claim into a section entitled "breach of express warranty" is enough to put Computers Unlimited on notice that ABC could claim that Computers Unlimited breached the two written express warranties in the Agreement.

### ii.    Notice and Waiver

Computers Unlimited's second argument on summary judgment asserts that ABC cannot sue for breach of express warranty because it failed to give notice by certified mail, the form required

11

by the Agreement.  ABC argues in response that the undisputed evidence shows that Computers Unlimited received actual notice of ABC's claim that the warranty was breached and that Computers Unlimited waived its right to demand strict compliance with the terms of the Agreement.

As discussed above, ABC has pled that Computers Unlimited breached two written warranties contained in the Agreement.  Under Alabama law, a buyer must provide notice to a seller before suing for breach of warranty.  ALA. CODE § 7-2-607(3)(a) (stating "[a] buyer must within a reasonable time after he discovers or should have discovered any breach [of warranty] notify the seller of the breach").  The Alabama Code requires only reasonable notice and is silent as to what form notice may take.  ALA. CODE § 7-1-201(26) (stating that "[a] person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it"). The question of how to interpret this "reasonable notice" standard has led to substantial amounts of litigation.  *See Southern Energy Homes, Inc. v. Washington*, 774 So. 2d 505, 511 (Ala. 2000); *Barrington Corp v. Patrick Lumber Co., Inc.*, 447 So. 2d 785, 788-89 (Ala. Civ. App. 1984) (discussing what forms of notice could satisfy the requirements of § 7-1-201(26)) .

Fortunately, for purposes of this case, the parties agreed in advance what form notice must take.  The Agreement provides that "[a]ny notice required or permitted under this Agreement *shall* be in writing and delivered in person or sent by registered or certified mail..."  (Agreement, A-5) (emphasis added).  A limitation on what form notice must take is enforceable under Alabama law if it clearly sets out the form of notice.  *Southern Energy Homes*, 505 So. 2d at 511 ("If a company

12

wishes to *require* a specific mode of notice as a prerequisite to warranty coverage, it may do so")
(emphasis added).  Because the notice provision of the Agreement is mandatory, it is binding.[2]

There is nothing in the Rule 56 record to show that ABC gave the required notice to
Computers Unlimited.  In fact, ABC implicitly admits that it did not comply with the notice
provision.  (Doc. # 59 at 25).  Therefore, the only way for ABC to avoid summary judgment on the
breach of express warranty claim is to show that Computers Unlimited waived its right to require
strict compliance with the notice provision.  Under Alabama law, waiver is "the voluntary and
intentional surrender or relinquishment of a known right."  *Ford v. Jackson Square, Ltd.*, 548 So.
2d 1007, 1013 (Ala. 1989) (quotations and citations omitted).  "An intention to waive a right may
be found where one's course of conduct indicates such an intention or is inconsistent with any other
intention."  *Id.*  The burden of establishing a waiver rests with ABC, the party arguing that waiver
has occurred.  *Bentley Sys., Inc. v. Intergraph Corp.*, 922 So. 2d 61, 93 (Ala. 2005) (citations
omitted).  Furthermore, Alabama law is clear that "[w]hether there has been a waiver is a question
of fact."  *Id.*

In this case, material issues of fact related to the issue of waiver preclude granting summary
judgment in favor of Computers Unlimited.  The record indicates that ABC sent Computers

_____

[2]ABC argues that the notice provision does not apply to the warranty in Schedule A because
that second warranty is "unconditional."  This argument lacks merit for two reasons.  First, the court
does not read the word "unconditional" to mean that ABC has no duty to provide notice of breach
to Computers Unlimited.  As discussed above, Alabama law generally requires notice to be given
for all claims of breach of warranty.  In fact, the warranty in Schedule A clearly contemplates notice
when it provides the remedy for breach of warranty – that Computers Unlimited will fix the errors
"for a period of one year at no extra charge."  (Agreement, A-12).  The second reason to reject
ABC's argument is that, since the warranty contemplates some notice, there is no reason to find that
the second warranty falls outside the notice provision.  Notice is a condition precedent to *recovering*
for breach of warranty, not a condition precedent for a breach of warranty *occurring*, and is therefore
not a condition on the warranty itself.

Unlimited a letter outlining the problems with the TIMS software on August 3, 2004. (Doc. # 65-4, A-8 ("Termination Letter")). The Termination Letter asserted various problems ABC was experiencing and demanded that Computers Unlimited address each of the issues raised. It is undisputed that Computers Unlimited received the Termination Letter and that several Computers Unlimited employees attempted to address the problems it outlines. (Doc. # 65-4, A-9). ABC argues that the fact that Computers Unlimited actually received the correspondence in the form of the Termination Letter and attempted to redress the concerns in the letter constitutes waiver of the certified mail requirement.

Computers Unlimited counters that its treatment of the Termination Letter is consistent with its duties under the Agreement to provide continuing customer service to ABC. From this perspective, the fact that Computers Unlimited did not object to the method of notice does not establish that Computers Unlimited waived its right to demand notice as to warranty claims. In support of its position, Computers Unlimited's points out that ABC noted in the Termination Letter that "[t]his letter shall be notice pursuant to Paragraph 3.11 [of the Agreement]." (*Id*.). Paragraph 3.11 describes the parties' rights to terminate the agreement and does not mention warranties at all. Indeed, the word "warranty" does not appear in the Termination Letter. Accordingly, Computers Unlimited asserts that the Termination Letter cannot itself be construed as notice of breach of warranty regardless of its method of delivery because the letter on its face shows that ABC was aware of its rights under the Agreement and chose not to invoke its warranty rights in the Termination Letter. The letter could be construed as a waiver of the requirement that *subsequent* notices be sent by certified mail. It is much more difficult to find that the Termination Letter is

sufficient both to give notice of breach of warranty and to waive the notice requirements *when it is silent as to warranties*.

Although the court finds ABC's waiver argument to be the weaker of the two, ABC has introduced sufficient evidence into the Rule 56 record to survive summary judgment on the issue of waiver. Paragraph 3.11, cited in the Termination Letter, mentions failure to perform obligations arising under the Agreement as grounds for termination. (Agreement, A-6). While none of the enumerated issues in the Termination Letter address warranties directly, it is clear that ABC meant to terminate the Agreement because it concluded that Computers Unlimited's performance was deficient. At least some of the enumerated issues could be read as breaches of the Agreement's written warranties (though ABC did not expressly designate them as such). Furthermore, even if the Termination Letter is not sufficient notice of a breach of warranty, it could operate as a waiver of the Agreement's notice provisions. Assuming that it does rise to level of a waiver, the record reflects that ABC and Computer Unlimited engaged in email and telephone dialogue discussing problems with the software. These informal communications could serve as notice, but only if the Termination Letter operates as a total waiver of all of the requirements of the notice provision, including the form of notice.[3]

### iii.    Issues of Fact Relating to Breach of Warranty

ABC has moved for partial summary judgment, asking the court to find that it is entitled to judgment as a matter of law that Computers Unlimited breached its express warranties. The court

---

[3]There is a material issue of fact as to whether the Termination Letter led to a complete waiver of the notice provisions; however, the court notes that it is a very close question. The Termination Letter complied with all of the Agreement's notice requirements except the method of delivery. At this stage, the court holds that ABC has enough evidence in the Rule 56 record to avoid summary judgment on the notice issue.

has already concluded that there is a material issue of fact as to the issue of notice.  Accordingly, the court cannot grant summary judgment in favor of ABC on its breach of express warranty claim.

However, ABC's motion is not confined to asking the court to find Computers Unlimited liable.  ABC also asks the court to determine that there are no genuine issues of material fact as to some of the elements of ABC's breach of express warranty claim.  Specifically, ABC argues that the record shows that Computers Unlimited breached the warranties because:  (1) the Software suffered from repeated and pervasive software errors; (2) the Software did not conform with the applicable Computers Unlimited Documentation; and (3) Computers Unlimited never repaired many of the software errors.  (Doc. # 75 at 21-22).  Items (1) and (2) mirror the language of the two written warranties in the Agreement.  (Agreement, A-12)("Software is unconditionally warranted against *software errors* for a period of one year. . .")(emphasis added); (Agreement, A-3)("[Computers Unlimited] hereby warrants that. . . Software furnished to Customer or modifications provided will *perform in accordance with the relevant [Computers Unlimited] Documentation*.. .")(emphasis added).  ABC argues that, even if the court cannot find Computers Unlimited liable at the summary judgment stage, the court can find that the Software did not comply with the warranties because, under Alabama law, "the crux of all express warranty claims is that the goods did not conform to the warranty."  *Ex Parte Miller*, 693 So. 2d 1372, 1376 (Ala. 1997) (citing ALA. CODE § 7-2-313(1)).

The court rejects ABC's argument because it finds genuine issues of material fact exist as to the nature and extent of most of the problems with the Software.  For each of the problems listed by ABC, Computers Unlimited has presented sufficient evidence to create an issue of fact.   For example, ABC alleges that "the Software often transmitted retail pharmacy claims with the wrong quantities. . . ."  (Doc. # 75 at 23).  Computers Unlimited has presented evidence that the problems

ABC experienced resulted from the way ABC set up the Software, not a problem with the integrity of the Software itself.  (Doc. # 78-3, Ex. B, Affidavit of Kenneth Rambold at ¶ 8).  With respect to another alleged problem, ABC asserts that "[i]t is undisputed that the Software could not perform CMN autocreation. . . and that [Computers Unlimited] was never able to repair or replace any Software component that allow it to do so."  (Doc. # 75 at 22).  The Rule 56 record reflects, however, that there is evidence that CMN autocreation did work.  (Doc. # 78-6, Ex. C, Affidavit of Melissa Christoferson at ¶ 8).  The factual issues arising in these two instances are representative of the factual issues that pervade the warranty analysis in this case.  These factual issues preclude the court from finding that Computers Unlimited breached the express warranties or that ABC has established certain elements of its warranty claims as a matter of law.

Furthermore, the court is not persuaded by ABC's argument that the errors admitted by Computers Unlimited entitle ABC to partial summary judgment.  There is a dispute of fact as to whether Computers Unlimited fixed the errors in compliance with its duties under the express warranties.  As to each of the problems it admits existed, Computers Unlimited has put forth evidence that the problem was promptly fixed in accordance with the terms of the warranty.  In fact, in its reply brief, ABC admits that the problems were fixed by Computers Unlimited.  (Doc. # 80 at 3-6).  ABC asserts that the bare fact that Computers Unlimited had to fix problems in the Software entitles ABC to summary judgment.  The court rejects this argument.  The parties' briefs agree that there is at least a material issue of fact as to whether Computers Unlimited promptly provided the remedy required by the warranties – fixing any Software errors free of charge.

It is certainly true that a warrantor does not have unlimited time to fix defects in the warranted goods.  At some point, a warranty fails of its essential purpose and a buyer of goods is

17

released from having to tender the goods to the seller repeatedly in hopes that the next fix will be the one that works. *DaimlerChrysler Corp. v. Morrow*, 895 So.2d 861, 865 (Ala. 2004) (stating that "[i]n order to establish a breach of an express warranty, ... the plaintiff must show that 'the warranty failed of its essential purpose'; that either the dealer refused to repair or replace the malfunctioning component, or failed to do so 'within a reasonable time'")(citations omitted).  In this case, the court cannot say as a matter of law that the warranty has failed of its essential purpose.  The record is replete both with allegations that the Software failed to perform as warranted and with instances where Computers Unlimited fixed the alleged problems.  Whether these fixes took more time than is "reasonable" is an inquiry that requires findings by the trier of fact, and is simply too much in dispute to be resolved on summary judgment in this case.

In sum, there are no issues related to breach of express warranty that may be resolved on summary judgment in this case.  The evidence in the Rule 56 record creates material issues of fact as to notice, as to which of the problems experienced by ABC are Computer Unlimited's fault, and as to the issue of the warranty failing in its essential purpose.  These issues require resolution by a fact finder.

### c.   Unjust Enrichment & Fraudulent Inducement

Computers Unlimited asserts two reasons why it is entitled to summary judgment on ABC's unjust enrichment claims.  The court disagrees with Computers Unlimited's first argument but finds the second argument persuasive.  Computers Unlimited's first assertion is that ABC's claim for unjust enrichment is incompatible with its claim for breach of contract at the summary judgment stage.  (Doc. # 51 at 18-19).  The court disagrees.  ABC concedes that it cannot recover for both breach of contract and unjust enrichment, but notes that it does not have to elect between its mutually

18

exclusive theories of liability until after a jury has rendered a verdict. *Liberty Nat'l Life Ins. Co. v. Jackson*, 603 So. 2d 1005, 1007 (Ala. 1992). That some claims are exclusive does not preclude a party from surviving summary judgment on those claims.

Computers Unlimited next argues that nothing in the record shows that ABC either attempted to rescind the contract or has the right to do so. As a result, Computers Unlimited urges that ABC has no evidence to show that the Agreement is somehow unenforceable. In other words, if the undisputed evidence shows that the Agreement is enforceable, ABC can have no unjust enrichment claim. ABC counters that it has pled a claim for fraudulent inducement that is sufficient to both survive summary judgement and give ABC the right to rescind the Agreement.

It is hornbook law that fraudulent inducement renders a contract voidable at the innocent party's election. *See Popwell v. Greene*, 465 So. 2d 384, 387 (Ala.1985); *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1278 (11th Cir. 2004) (stating that, under Florida law, "[i]t is axiomatic that fraudulent inducement renders a contract voidable, not void"). The question is therefore whether ABC has produced evidence in the Rule 56 record sufficient to withstand summary judgment on the issue of fraudulent inducement. The court concludes that the evidence of record cannot support a claim of fraudulent inducement because ABC cannot point to any potentially admissible evidence as to an allegedly fraudulent statement made before it entered into the Agreement. Only statements alleged to have been made before the Agreement was signed in July 2003 can form the basis of a fraudulent inducement claim. *Oakwood Mobile Homes, Inc. v Barger*, 773 So.2d 454, 459 (Ala. 2000) ("Fraud in the inducement consists of one party's misrepresenting a material fact concerning the subject matter of the underlying transaction and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action") (emphasis

19

omitted); (*see also* Agreement, A-7) (containing merger clause and requiring all modifications to be made in writing).

ABC alleges five instances of Computers Unlimited employees making knowingly false statements to ABC. (Doc. # 59 at 32-33). The court will address each in turn.

The first of these alleged statements is not a statement at all, but rather a recollection of one ABC employee about what another ABC employee intended: "Hank Allen testified that Keith Sanderson's intent in purchasing the TIMS software was primarily to 'have prescription information transferred from SalesLogix to the billing program automatically.'" (*Id*. at 32)(quoting Doc. # 52-5, Ex. E, Declaration of Hank Allen at ¶ 6). Allen's declaration about Sanderson's intent does not imply a representation by Computers Unlimited as to any fact at all.

The second statement, which is indicated in a portion of a deposition of ABC employee Tensia Hughes, was alleged to have been made in September 2003, months *after* the Agreement was signed. (*See* Doc. # 59-9, Ex. G-2, Deposition of Tensia Hughes at 307, 309).

The third and fourth allegedly fraudulent statements are inadmissible hearsay. These statements were both made by Janice Ferrell, a former ABC employee. In the third statement, Ferrell states that a Computers Unlimited employee told Tensia Hughes (and Hughes represented that to Ferrell) that SalesLogix and TIMS would function together successfully. (Doc. # 53-2, Deposition of Janice Ferrell at 109-111). In the fourth statement, Ferrell asserts that a Computers Unlimited representative told Sanderson (and Sanderson repeated the statement to her) that TIMS was capable of successfully interfacing with SalesLogix. (*Id*. at 106-06, 112-13). Both of these statements are hearsay as both are statements of someone other than the deponent offered for the truth of the matter asserted.

20

Of course, merely observing that the statements are hearsay does not put an end to the inquiry. Inadmissible hearsay may be used to show the existence of a material issue of fact in opposing a motion for summary judgment. As Supreme Court has stated:

> We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*Celotex*, 477 U.S. at 324. The Eleventh Circuit interprets this passage "as simply allowing otherwise admissible evidence to be submitted in *inadmissible form* at the summary judgment stage, though at trial it must be submitted in admissible form." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (emphasis supplied). Specifically, "we do not read [the binding precedent] to hold that inadmissible hearsay may be used even when it cannot be reduced to admissible evidence at trial." *Id.* at 1585. This court must then determine whether the hearsay in this instance can be reduced to admissible evidence at trial.

The court concludes that this hearsay cannot be reduced to an admissible form. The principle reason for reaching this conclusion is that the record reflects that both Sanderson and Hughes were deposed and both gave statements in some form that were introduced into the Rule 56 record. Computers Unlimited introduced Sanderson's deposition. (Docs. # 52-3 and 52-4, Ex. B). ABC introduced an affidavit by Sanderson that is silent as to the misrepresentations alleged. (Doc. 65-4, Ex. A-2). Also, as quoted above, Computers Unlimited introduced the deposition of Tensia Hughes. (Docs. # 59-8 and 59-9, Ex. G). Certainly ABC could have deposed the declarants (or sought an affidavit from them) and this may have resolved the hearsay problem, especially in the case of

21

Sanderson.  The court concludes that ABC's reliance on inadmissible hearsay is not a mere problem of form.  To allow ABC to rely on hearsay when (1) the declarants made other statements that have been introduced in the record and (2) ABC had the opportunity to resolve the problem is a stretch that goes beyond the narrow scope of the rule that permits consideration of inadmissible hearsay on summary judgment.[4]

The remaining statement refers to an email sent in August 2004, well after the Agreement was executed.  (Doc. # 64-3, Ex. K-1 at CU1582-87).  In sum, ABC has not pointed to any competent evidence that suggests Computers Unlimited made an allegedly false representation before the Agreement was executed.  There is no genuine issue of material fact as to fraudulent inducement and therefore Computers Unlimited is entitled to summary judgment on those claims.  Furthermore, because ABC cannot rescind the agreement as a result of fraudulent inducement, the undisputed evidence establishes that the Agreement is binding.  As a result, Computers Unlimited is entitled to summary judgment on the unjust enrichment claim as well.

### d.      Remaining Fraud-Based Claims

Computers Unlimited argues that ABC does not have evidence sufficient to withstand summary judgment on any fraud claims in ABC's Amended Complaint.  Although the court has concluded that ABC's fraudulent inducement claims cannot survive summary judgment, the other fraud claims are supported by evidence sufficient to create a genuine issue of material fact.  As discussed in the previous section, ABC has introduced evidence that Computers Unlimited's

---

[4]It should be emphasized that it is ABC's burden to direct the court to statements in the record that support its arguments.  "There is no burden upon the district court to distill every potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is on the parties to formulate arguments. . . ."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

representatives made allegedly false statements in September 2003 and August 2004. While these claims cannot support a claim of fraudulent inducement because they occurred after the Agreement was signed, they can form the basis of an independent fraud claim. Of particular note is the statement made by Melissa Cristoferson that "CMN auto-renew doesn't really work for pharmacy." (Ex. K, CU1583). This statement alone is sufficient to create a disputed factual issue on the fraud, misrepresentation, and concealment claims. Computers Unlimited has offered an affidavit by Cristoferson (Doc. # 78-6, Ex. C) that purports to explain why her statement was not fraudulent, but that does not change the analysis because the court cannot make the credibility findings necessary to resolve the factual issue created by the conflict between the two pieces of evidence. Again, this issue of fact alone is sufficient to preclude the entry of summary judgment for Computers Unlimited on ABC's fraud, misrepresentation, and concealment claims.[5]

### e.       Statute of Limitations

Computers Unlimited argues that ABC's fraud-based claims are time-barred because ABC knew or should have known about the alleged defects in the Software more than two years before ABC filed this action. The principal fact upon which Computers Unlimited relies is that the Software "went live" on March 1, 2004, and ABC filed this action on May 3, 2006. (Doc. # 1-A at 3). ABC counters that most of the defects in the Software were not fully apparent until the Software had been running for some time after it "went live." It also argues that the limitations period should be tolled because Computers Unlimited concealed the evidence of its wrongdoing. The court agrees

---

[5]However, the court rejects ABC's glib assertion that "the falsity of the foregoing representations creates a factual inference that the other representations concerning the software also were false when made." (Doc. # 59 at 33). This statement is supported by no citations and is totally alien to the Alabama law of fraud. Instances of fraud must be pled with particularity under Federal Rule of Civil Procedure 9 and proven–they cannot be presumed.

with ABC that Computers Unlimited is not entitled to summary judgment on the limitations issue but rejects the tolling argument.

The parties agree that Alabama's two-year statute of limitations applies and that the statute begins to run when ABC discovered or should have discovered the facts of the fraud.  ALA. CODE § 6-2-3. The issue to be determined is whether there is a question of fact as to when ABC learned (or should have learned) that the Software materially differed from what Computers Unlimited allegedly represented its condition to be.  The court finds that four such factual issues exist.  First, while the evidence shows that ABC may have known before the "go live" date of March 1, 2004, that the Software had *some* problems, this fact is insufficient to show (as a matter of law) when ABC knew or should have known of *all* the alleged problems in the Software.  Second, ABC has shown evidence that creates an issue of fact as to exactly when it learned of specific issues in the Software (*See* Docs. # 64-7 & -8, Ex. N) (documenting email exchanges between ABC and Computers Unlimited and highlighting confusion over the extent of specific alleged problems).

Furthermore, to the extent that Computers Unlimited argues that the limitations period should run from when ABC learned that the Software was not "completely automatic," there is an issue of fact as to what the term "automatic billing" means in the Agreement.  Computers Unlimited asserts that "automatic" means *completely independent* of human input; ABC contends that "automatic" means that *some parts or processes* of the Software would function without the need for human input.  Both sides have directed the court to factual evidence that supports their respective interpretations.  In light of the conflicting testimony, the court concludes that a jury must make the determination of what the parties meant by "automatic."  Finally, to the extent that Computers Unlimited made false representations to ABC during the year in which the Software was under

24

warranty, these representations could give rise to separate fraud-based claims that accrued after that "go-live" date in March 2004.  For example, as noted above, ABC has presented evidence that Computers Unlimited made allegedly false statements in September 2003 and August 2004. Accordingly, the Rule 56 record establishes that ABC could have relied to its detriment on representations Computers Unlimited made after ABC purchased and implemented the Software.

The court rejects ABC's claim that the statute of limitations should be tolled beyond the apparent time of discovery because Computers Unlimited fraudulently concealed its wrongdoing. The Alabama Code provides that

> [i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued *until the discovery by the aggrieved party of the fact constituting the fraud*, after which he must have two years within which to prosecute his action.

ALA. CODE § 6-2-3 (emphasis added).  Courts have consistently interpreted this section to toll the statute of limitations where a defendant concealed "the fact constituting the fraud."  *Parsons Steel, Inc. v. Beasley*, 522 So. 2d 253, 256 (Ala. 1988) (citing *Kelley v. Smith*, 454 So. 2d 1315, 1317 (Ala. 1984)).  The tolling of the statute is a corollary to the discovery rule in fraud cases: a defendant that conceals the facts of the fraud prevents a plaintiff from reasonably discovering those facts.  The defendant's conduct is relevant to determining when a plaintiff should have discovered the fraud but the crux of the inquiry is on what the plaintiff knew at what time.

ABC has pointed to no facts in the Rule 56 record that show that Computers Unlimited concealed the fact of the alleged fraud.  Instead, it appears that ABC was on notice of the alleged fraud when it learned that the Software did not perform as ABC claims Computers Unlimited personnel represented it would.  There is no allegation that Computers Unlimited hid or withheld

25

information that prevented ABC from learning about any of the alleged problems in the Software. In fact, the specific example used by ABC in making its tolling argument shows that there is no reason to toll the statute in this case. ABC highlights the fact that Computers Unlimited is alleged to have known all along that the auto-renew function does not function in pharmacy applications. (Doc. # 59 at 32). However, the time at which Computers Unlimited knew of the alleged defect is not relevant to when ABC discovered it. There is no evidence that auto-renew failed to function properly in every instance. There is a question of fact as to whether the auto-renew worked as it was represented it would and when ABC first learned it was not working properly; however, there is no substantial evidence that Computers Unlimited concealed any facts about that from ABC. The limitations period for ABC's fraud claims tolled until it discovered those defects, but no longer.

In conclusion, it should be noted that the court finds that it is for the trier of fact to determine whether ABC's claims are timely. It is still possible that the evidence at trial will show that ABC knew or should have known about any alleged errors in the Software more than two years before the action was filed. The court merely rules that issues of fact preclude the entry of summary judgment in favor of Computers Unlimited on statue of limitations issues.

**f.    Damages Related to Fraud and Warranty**

ABC concedes that it will seek only "damages in the form of the price of the Software and implementation expenses, plus costs, interest, attorneys' fees and punitive damages." (Doc. # 59 at 40). Computers Unlimited argues that ABC could only receive the full purchase price of the Software as damages if it were able to show that the existing Software is worthless. (Doc. # 71 at 13-14). Furthermore, Computers Unlimited urges that ABC's failure to put any evidence of the

26

Software's value in its present condition is grounds for summary judgment.  While the court is persuaded by Computers Unlimited's first argument, it rejects the second argument.

It is true that the measure of damages applicable to this case will be "the difference between what the [Software] is actually worth and what it would have been worth if the property had been as represented."  *Wilhoite v. Franklin*, 570 So. 2d 1236, 1237 (Ala. Civ. App. 1990) (discussing the measure of damages in fraud cases); see also *Norman Properties v. Bozeman*, 557 So. 2d 1265, 1271 (Ala. 1990) (noting that the measure of damages for breach of warranty claims is the difference between the value of the object as warranted and the value of the object as actually provided); ALA. CODE. § 7-2-714(2) (stating that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted...").  However, the question of how much the allegedly flawed Software is worth is a question for the jury in this case, not one the court can resolve on the Rule 56 record.  A jury could find that the Software has no value (or that it is worth the full purchase price) on the evidence currently contained in the record.[6]

---

[6]The court notes that Alabama law permits ABC the opportunity to prove that it should recover its implementation expenses. *See Wilhoite*, 570 So. 2d at 1237 ("All naturally resulting damages, including expenses incurred as a result of the fraud, are recoverable, but they must be actual damages proved at trial"); ALA. CODE § 7-2-714(3) (allowing incidental and consequential damages in breach of warranty actions); ALA. CODE § 7-2-715(1) (including "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach" in the definition of incidental damages).  The court notes, however, that the authorities allow implementation expenses to be available as damages only if ABC can prove that it would not have incurred the expenses but for Computer Unlimited's fraud or breach of warranty.

### g.      Motion to Strike ABC's Expert

Computers Unlimited has moved to strike ABC's expert, William Peyton.  The primary thrust of Computers Unlimited's brief in support of its motion is that Peyton's consequential damage calculations are unreliable.  (Doc. # 47).  In its response brief, ABC noted that it has abandoned its claims for consequential damages; therefore, it argues that the motion to strike is moot.  (Doc. # 57). ABC still seeks to offer Peyton as an expert on the errors or defects in the Software.  (*Id*. at 1). Computers Unlimited denies that its motion is moot and asks the court to strike Peyton, arguing that Peyton is not competent to testify as an expert on medical billing software and that all of his conclusions are tainted by his poor methodology.  (Doc. # 70).

Regardless of Peyton's qualification to testify as an expert on software issues, the court has not relied on his opinions in addressing the parties' arguments on summary judgment.  Accordingly, the court agrees with ABC that Computers Unlimited's motion to strike is moot for purposes of these motions.[7]

## IV.     CONCLUSION

For the foregoing reasons, Computers Unlimited's motion for summary judgment is granted in part and denied in part.  Specifically, the court finds that ABC has abandoned the following claims:  (7) Negligence; (8) Wantonness; (10) Restatement of Torts § 552; (12) Breach of Implied Warranty of Fitness for a Particular Purpose; and (13) Breach of Implied Warranty of Merchantability.  Furthermore, the court finds that ABC has failed to present sufficient evidence to

---

[7]The court construes Computers Unlimited's motion as being limited to summary judgment issue.  The court makes no finding about Peyton's qualifications under *Daubert* or Federal Rule of Evidence 702.  ABC is free to put forth Peyton as an expert and Computers Unlimited is free raise any challenge to his qualifications or testimony via a motion *in limine* at the appropriate time.

withstand summary judgment as to these claims: (5) Unjust Enrichment; (6) Fraudulent Inducement; and (9) Fraudulent Inducement.   ABC's claims for (1) Breach of Contract; (2) Fraud; (3) Misrepresentation; (4) Suppression/Concealment; and (11) Express Warranty survive summary judgment.  ABC's motion for partial summary judgment is denied.  Computers Unlimited motion to strike ABC's expert is moot.  The court will enter a separate order with this memorandum opinion.

      **DONE** and **ORDERED** this _____12th_____ day of August, 2008.

                                _____

                                **R. DAVID PROCTOR**
                                UNITED STATES DISTRICT JUDGE